**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NELSON FERNANDO KLEISS MENDOZA,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**LUIS SOTO, et al.,**<br><br>**Respondents.** | Civil Action No. 26-11427 (KSH)<br><br>**MEMORANDUM OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on Nelson Fernando Kleiss Mendoza's petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by immigration authorities. Kleiss is subject to a removal order that was reinstated in December 2021. The same month the removal order was reinstated, immigration officials released Kleiss on an order of supervision. Kleiss lived under that order for nearly five years before being re-detained on September 1, 2026, when U.S. Immigration and Customs Enforcement ("ICE") revoked the order and took him into custody.

At issue is whether the Court has jurisdiction to review ICE's revocation of Kleiss's supervised release and, if so, whether revocation of Kleiss's supervised release was proper under 8 C.F.R. § 241.4(l)(2). For the reasons explained below, the Court finds that it has jurisdiction to hear Kleiss's petition and that Kleiss's supervised release was improperly revoked. Accordingly, the Court will GRANT the Petition and order Respondents to release Kleiss within 24 hours under the conditions of his order of supervision.

## I. BACKGROUND & PROCEDURAL HISTORY[1]

Kleiss is a 47-year-old citizen of Venezuela. (ECF No. 1, Petition ¶ 1.) In May 2018, he was removed to Venezuela under an expedited order of removal (the "2018 Removal Order"). (ECF No. 4-1 at 3-4.) In early December 2021, Kleiss reentered the United States near Brownsville, Texas. (ECF No. 18-3; ECF No. 4-1 at 4.) On December 4, 2021, U.S. Customs and Border Protection ("CBP") agents encountered and arrested Kleiss near the Rio Grande Valley. (ECF No. 4-1 at 4.) That same day, CBP reinstated the 2018 Removal Order under 8 U.S.C. § 1231(a)(5). (ECF No. 18-3; ECF No. 18-1, Sanon Decl. ¶ 12.)

While in CBP custody, Kleiss claimed fear of returning to Venezuela, and he was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. (ECF No. 4-1 at 4.) USCIS did not schedule that interview for nearly five years. (*Id.*) It interviewed him on September 25, 2026—more than three weeks after ICE re-detained Kleiss—and made a negative reasonable fear finding. (ECF No. 18-1, Sanon Decl. ¶ 5.) Kleiss sought review before an immigration judge, which was scheduled for October 9, 2026, and has since been rescheduled to October 15, 2026. (*Id.*; ECF No. 19-1 at 8; ECF No. 20-1.)

Kleiss was released from CBP custody on December 17, 2021, on an order of supervision ("OSUP") under 8 C.F.R. § 241.4. (ECF No. 18-1, Sanon Decl. ¶ 9; ECF No. 18-4 at 1.) The OSUP required Kleiss to, among other things, periodically report to ICE's office at 26 Federal Plaza in New York, commit no crimes, and assist ICE in obtaining travel documents to effectuate his removal. (ECF No. 18-4 at 1, 3, 5.) Respondents do not contend that Kleiss violated any of

[1] Because the Court decides the Petition on a separate basis and to protect Kleiss's privacy, the Court does not discuss his medical conditions or history. (*See* ECF Nos. 6, 10, 16, 19-1.)

those conditions while under the OSUP or that he committed any crimes. (*See* ECF No. 4-1 at 4; ECF No. 4-2 at 2; ECF No. 18-1, Sanon Decl. ¶ 13.)

On September 1, 2026, ICE officers took Kleiss into custody at 26 Federal Plaza, in New York, where Kleiss had appeared for a required check-in under the OSUP. (ECF No. 4-1 at 3; ECF No. 6 at 1.) The same day that Kleiss was detained, ICE issued him a Notice of Revocation of Release ("Revocation Notice"), revoking Kleiss's OSUP of nearly five years. (ECF No. 4-2 at 2-3.) The Revocation Notice was signed by ICE Assistant Field Office Director ("AFOD") Darius Robinson and states that Kleiss's release was revoked under 8 C.F.R. § 241.4(l). (*Id.*)

The Revocation Notice contained several to-be-checked boxes, each containing a reason for revocation. (*See id.*) Only one reason for revocation is checked, stating that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (*Id.* at 2.) Under that reason, the box for "ICE has obtained a travel document and scheduled your removal" is blank; the box for "ICE is seeking a travel document to effect your expeditious removal to" Venezuela is checked. (*Id.*)

Beneath AFOD Robinson's signature line, the form itself instructs in print that a revocation under § 241.4 must be made by ICE's Executive Associate Director ("EAD") or, if revocation is in the public interest and referral to the EAD is not reasonable, by an ICE field office director ("FOD"). (*Id.* at 3; *see* 8 C.F.R. §§ 1.2, 241.4(l)(2).)

According to Respondents, an ICE deportation officer served Kleiss the Revocation Notice on September 1, and he refused to sign it. (ECF No. 4-2 at 3.) A second officer then interviewed Kleiss and recorded his response that the revocation was "unfair because he has continued to comply with all ICE requirements." (ECF No. 18-2 (Form 71-090).) Kleiss states in a declaration that he was never told the grounds for the revocation. (ECF No. 19-1, Kleiss Mendoza Decl. ¶¶ 15-

16.) That same day, Kleiss was transferred to Delaney Hall Detention Facility in Newark, New Jersey, and continues to be detained. (ECF No. 1, Petition ¶ 1; ECF No. 6 at 1.)

On September 3, 2026, Kleiss filed this Petition, and the Court enjoined Respondents from transferring him out of New Jersey. (ECF Nos. 1, 2.) The Petition alleges that Kleiss was being held without bond under 8 U.S.C. § 1225(b). (ECF No. 1, Petition ¶¶ 9, 33.) Respondents answered that Kleiss is instead detained under 8 U.S.C. § 1231 on a final order of removal. (ECF No. 4, Resp. Letter at 1-2.) Kleiss replied that ICE revoked his OSUP without complying with 8 C.F.R. § 241.4(l) and that his removal is not imminent (ECF No. 5 at 1-2), and he has since twice reiterated the former in subsequent filings (ECF No. 10 at 2; ECF No. 16 at 2).[2]

On September 28, 2026, the Court ordered Respondents to file a supplemental response, with a sworn declaration from an ICE official, addressing whether: 8 U.S.C. § 1252(g) or § 1252(b)(9) bars review; ICE has obtained travel documents; Kleiss has an anticipated removal date; and the official who revoked Kleiss's OSUP had the authority to do so. (ECF No. 17.) The Court cautioned that "failure to comply with this Order may result in [Kleiss's] release." (*Id.*)

[2] The Petition does not plead the § 241.4 claim; Kleiss first raised it in reply to Respondents' disclosure that he is held on a reinstated 2018 Removal Order. (ECF No. 5 at 1-2; ECF No. 10 at 2.) A claim first raised in a reply is not preserved absent amendment. *See Thieme v. Warden Fort Dix FCI*, 154 F.4th 115, 121 n.4 (3d Cir. 2025). But the Court directed Respondents to address the § 241.4 claim, including the revoking official's authority (ECF No. 17), and Respondents answered with argument and a sworn declaration, without objecting that the claim falls outside the Petition. (ECF No. 18 at 1-3; ECF No. 18-1 ¶¶ 9-10.) The Court will not raise that objection for them. C*f. Wood v. Milyard*, 566 U.S. 463, 466 (2012) (noting that a court may not revive a habeas defense the government is aware of and intelligently chooses not to assert). The Court therefore construes the reply as a request to amend the Petition and grants it. *See* 28 U.S.C. § 2242; Fed. R. Civ. P. 15(a)(2); *Ramirez v. Johnson*, No. 26-03691, 2026 WL 2547407, at *3 n.4 (C.D. Cal. Aug. 28, 2026) (granting leave to amend and reaching a claim first raised in a counseled reply where respondents, ordered to brief it, suffered no prejudice); *Youngblood v. Conway*, 426 F. Supp. 2d 107, 114 (W.D.N.Y. 2006) (granting leave to amend and reaching the merits of new habeas claims where the respondent argued their merits instead of addressing whether the amendment was timely).

Respondents filed their supplemental response on October 2, 2026, with the declaration of a deportation officer. (ECF No. 18, Supp. Resp.; ECF No. 18-1, Sanon Decl.) According to the declaration, USCIS conducted Kleiss's reasonable fear interview on September 25, 2026, and made a negative finding. (ECF No. 18-1, Sanon Decl. ¶ 5.) At the time of the Petition, Kleiss's request for review of that finding was scheduled to be heard on October 9, 2026. (ECF No. 18-1, Sanon Decl. ¶ 5; ECF No. 19-1 at 8.) On travel documents, the declaration states that Venezuela participates in an electronic nationality verification program and that, "[o]nce all impediments are lifted, such as this pending habeas litigation, Petitioner would be allocated on a charter flight for removal." (ECF No. 18-1, Sanon Decl. ¶¶ 6-8.) No removal date has been set. (ECF No. 18, Supp. Resp. at 3.) On the revoking official's authority, the declaration states only that AFOD Robinson signed the notice "pursuant to 8 C.F.R. § 241.4(c)(4)." (ECF No. 18-1, Sanon Decl. ¶ 10.)

Kleiss filed a reply on October 5, 2026, with his own declaration, and seeks release under the conditions of his order of supervision. (ECF No. 19 at 3; ECF No. 19-1.)

On October 9, 2026, Kleiss informed the Court that the immigration judge's review had been rescheduled to October 15, 2026, and renewed his request for release. (ECF No. 20; ECF No. 20-1.)

## II. <u>STANDARD OF REVIEW</u>

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion) (citing U.S. Const. art. I, § 9, cl. 2). District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The

burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. DISCUSSION

Respondents argue that the Court lacks jurisdiction to review the revocation of Kleiss's OSUP and that his detention under 8 U.S.C. § 1231 is lawful. (ECF No. 18, Supp. Resp. at 1-3.) In response, Kleiss argues that ICE took him into custody without following the regulations that governed the revocation of the OSUP—8 C.F.R. § 241.4(l)—and that Respondents have not shown that the revoking official had authority to do so. (ECF No. 5 at 1-2; ECF No. 10 at 2; ECF No. 19, Reply at 2-3.) The Court agrees with Kleiss.

Kleiss's detention is governed by § 1231 because he was removed from and later reentered the United States. *See* 8 U.S.C. § 1231(a)(5); *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) (holding that § 1231, not § 1226, governs the detention of noncitizens subject to reinstated removal orders). Section 1231 requires the U.S. Department of Homeland Security ("DHS") to remove the noncitizen within a 90-day period, during which detention is mandatory. 8 U.S.C. § 1231(a)(1)-(2). After the 90-day period, a noncitizen who has not been removed may be released under supervision. 8 U.S.C. § 1231(a)(3); *Guzman Chavez*, 594 U.S. at 529.

In December 2021, ICE released Kleiss on an OSUP under 8 C.F.R. § 241.4. That regulation prescribes who may revoke an OSUP and how. Thus, the central question is whether ICE properly revoked Kleiss's OSUP. Before reaching that question, however, the Court must determine whether it has jurisdiction to review Kleiss's petition.

### A. Sections 1252(g) and 1252(b)(9) Do Not Bar Review

Respondents rely on *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020), to press that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip the Court of jurisdiction. (ECF No. 18, Supp. Resp. at 2.)

According to Respondents, Kleiss challenges "the enforcement mechanism utilized to execute his final order of removal" (*id.*), and review of such an enforcement mechanism is barred by *Tazu*. Here, however, Kleiss is not challenging the removal enforcement mechanism. He is challenging the lawfulness of his OSUP revocation. So *Tazu* does not reach this case.

Section 1252(g) bars review of claims arising from the Attorney General's decision or action to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). It "does not sweep broadly" and "reaches only these three specific actions, not everything that arises out of them." *Tazu*, 975 F.3d at 296. *Tazu* explains how § 1252(g) limits judicial review.

In *Tazu*, the petitioner complied with the terms of his supervised release for a decade. 975 F.3d at 295. While on supervised release, the government obtained Tazu's renewed passport, re-detained him three days later, and intended to remove him three-and-a-half weeks later had courts not intervened. *Id.* at 295, 298. On those facts, the Third Circuit held "that a brief door-to-plane detention is integral to the act of" executing a removal order because re-detention "was simply the enforcement mechanism the Attorney General picked to execute [Tazu's] removal." *Id.* at 298-99. Because the issue in *Tazu* was one of removal enforcement, "§ 1252(g) funnel[ed] review away from the District Court and [the Third Circuit]." *Id.* at 299.

But *Tazu*'s holding was narrow. The Third Circuit held only that a brief door-to-plane detention is integral to executing a removal order, so § 1252(g) bars review of a challenge to such an order, and left open challenges to "Government actions taken before the Attorney General tried to execute that order." *Id.* at 298; *see Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. 2025) (reading *Tazu* to hold only that a brief door-to-plane detention is integral to executing a removal order and exercising jurisdiction over a challenge to the revocation of an order of

supervision). A detainee, like Kleiss, may still challenge non-enforcement mechanisms such as the revocation of his OSUP.

Respondents' own submissions distinguish this case from *Tazu*. When ICE re-detained Kleiss, it had no travel document for him and the Revocation Notice says only that ICE "is seeking" one. (ECF No. 4-2 at 2.) Respondents' declaration filed a month later does not state that ICE has obtained a travel document or that it has even requested one. (*See* ECF No. 18-1, Sanon Decl. ¶¶ 6-8.) That declaration only states that Kleiss "would be allocated on a charter flight" once "all impediments are lifted, such as this pending habeas litigation." (*Id.* ¶ 8.) Yet—unlike in *Tazu*—no removal date has been set for Kleiss. (ECF No. 18, Supp. Resp. at 3.) Respondents' representation "establishes only that Respondents intend to pursue removal at some unspecified point in the future if [certain] contingencies occur," and it "does not establish when those contingencies will occur." *Tinuar Tecun v. Wilson*, No. 26-11081, 2026 WL 2859096, at *3 (D.N.J. Sept. 23, 2026) (citing *Zadvydas*, 533 U.S. at 701).

Nor is this litigation the only impediment. A noncitizen subject to a reinstated order who expresses a fear of return "shall be immediately referred to an asylum officer" for a reasonable fear determination. 8 C.F.R. § 241.8(e). Kleiss expressed that fear in December 2021. (ECF No. 4-1 at 4.) USCIS, however, did not interview him until September 25, 2026—over three weeks *after* Kleiss was re-detained—and an immigration judge is not scheduled to review the result of that interview until October 15, 2026, a date that has already been postponed once. (ECF No. 18-1, Sanon Decl. ¶ 5; ECF No. 19-1 at 8; ECF No. 20-1.) Respondents do not suggest that they may remove Kleiss to Venezuela before or soon after that review concludes. *See* 8 C.F.R.

§ 1208.31(g)(1) (providing that, if the immigration judge concurs in a negative finding, "the case shall be returned to DHS for removal of the alien").[3]

A detention that began before the government had taken the first step required to remove Kleiss, and that has no end date, is not a "brief door-to-plane detention." *Tazu*, 975 F.3d at 298; *see Egharevba v. Benzel*, No. 26-10628, 2026 WL 2655018, at *3 n.2 (D.N.J. Sept. 9, 2026) (distinguishing *Tazu* where, like here, respondents "offered no evidence that they possess travel documents and that Petitioner's removal [was] similarly imminent").

Section 1252(b)(9) does not change the result. That provision channels into a petition for review "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Its purpose "is to channel claims into a single petition for review, not to bar claims that do not fit within that process." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). So to fall outside § 1252(b)(9), a claim "must raise legal or factual questions that a court of appeals will not later be able to review meaningfully" on a petition for review. *Khalil v. President U.S.*, 164 F.4th 259, 274-75 (3d Cir. 2026) (per curiam). A detention claim thus fails when it merely repackages a challenge to removal into a habeas petition, because that "would require deciding whether removing [the petitioner] would be unlawful." *Id.* at 276.

[3] The immigration judge's future review does not affect this Court's decision. (*See* ECF No. 19-1 at 8.) The Court's ruling rests on the revocation of Kleiss's OSUP on September 1, 2026, which was unlawful when it was made. *See infra* Part III.B. Whether the immigration judge concurs in the negative reasonable fear finding or vacates it, that ruling cannot supply the authority or the findings that were missing when Kleiss's release was revoked. Nor does the future ruling affect the Court's jurisdiction. *See Ceesay*, 781 F. Supp. 3d at 153 (holding that the government's later representation that removal was imminent "does not retroactively deprive this Court of jurisdiction").

Here, Kleiss's challenge to Respondents' revocation of the OSUP is independent of removal.[4] Whether the official who revoked Kleiss's OSUP had authority to do so has no bearing on the validity of his removal order. *See Ceesay*, 781 F. Supp. 3d at 150-54, 161-62 (exercising jurisdiction over and sustaining a challenge to an AFOD's authority to revoke an order of supervision); *V.S.P.H. v. Soto*, No. 25-18835, 2026 WL 371162, at *2-3 (D.N.J. Feb. 10, 2026) (holding that the petitioner's argument that respondents "failed to follow their own procedures before detaining her has no bearing on the validity of her removal order").

Moreover, a court of appeals could not meaningfully review Kleiss's OSUP-revocation claim later. Unlike the petitioner in *Tazu*, who could "raise all his claims in a petition for review" that was then pending in the Second Circuit, 975 F.3d at 299, Kleiss has no petition for review pending. He states that he will petition the Third Circuit if the immigration judge upholds the negative reasonable fear finding. (ECF No. 19, Reply at 2.) But such a petition would concern his fear of returning to Venezuela and be based "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Respondents do not explain how ICE's revocation decision would be part of that record, or how the Third Circuit could decide in that proceeding whether AFOD Robinson had authority to return Kleiss to custody. For Kleiss's claim, "review is now or never." *Tazu*, 975 F.3d at 299 (quoting *E.O.H.C.*, 950 F.3d at 180).

The Court thus has jurisdiction to decide whether Kleiss is in custody in violation of the regulations that govern his release. *See V.S.P.H.*, 2026 WL 371162, at *2-3 (exercising jurisdiction over a claim that respondents detained the petitioner without following their procedures for terminating an order of supervision); *Rondon Reyes v. Jamison*, No. 26-1324, 2026 WL 970231,

[4] The Court notes that Kleiss also asks the Court to stay his removal. (ECF No. 1, Petition at 20.) That request *does* directly challenge the execution of his removal order, and the Court lacks jurisdiction to grant it. *See Tazu*, 975 F.3d at 297.

at *3 (E.D. Pa. Apr. 9, 2026) (holding that § 1252(g) barred review of ICE's discretionary decision to revoke an order of supervision, but not review of "whether Respondents complied with their own revocation procedures when doing so").

**B. The Revocation of Kleiss's Release Did Not Comply with 8 C.F.R. § 241.4(l)(2)**

Respondents represent that Kleiss was released under 8 C.F.R. § 241.4, and the notice revoking his release invokes § 241.4(l). (ECF No. 18-1, Sanon Decl. ¶ 9; ECF No. 4-2 at 2.) Section 241.4(l) allows two paths to a valid revocation. *First*, revocation by either the EAD or a person designated in writing to exercise the EAD's powers. 8 C.F.R. § 241.4(l)(2), (c)(4). Or *second*, revocation by an FOD, or a written designee, only upon the finding that revocation is in the public interest and circumstances do not reasonably permit referral to the EAD. *Id.* § 241.4(l)(2), (c)(4); *see id.* § 1.2.

Kleiss bears the burden of showing that his custody is unlawful. *See* 28 U.S.C. § 2241(c)(3); *Walker*, 312 U.S. at 286. He has carried it. The record shows that an assistant field office director, an official § 241.4(l)(2) does not name, signed the revocation. Any written designation that would supply the missing authority is in Respondents' hands. The Court ordered them to identify the revoking official's authority and warned that failure to comply could result in Kleiss's release. (ECF No. 17.) They identified none, and they point to no finding of the kind the second path requires. On this record, the revocation followed neither path.

As to the *first* path, AFOD Robinson is neither an EAD nor an FOD. Respondents do not argue otherwise.[5] Their position is that AFOD Robinson signed the notice "pursuant to 8 C.F.R. § 241.4(c)(4)." (ECF No. 18-1, Sanon Decl. ¶ 10; ECF No. 18, Supp. Resp. at 3.) But, as Kleiss

[5] In *Ceesay*, the government produced a delegation order on which it relied for an AFOD's authority to revoke an order of supervision, and the court held that the order did not confer that authority. 781 F. Supp. 3d at 161-62. Respondents here have produced no delegation order at all.

notes, § 241.4(c)(4) does not itself confer authority on anyone. (ECF No. 19, Reply at 2.) Section 241.4(c)(4) recognizes only authority conferred by a written designation. The Court directed Respondents to identify the official who revoked Kleiss's release and "that official's authority to do so." (ECF No. 17.) Respondents, however, have not produced any written designation or other document that would give AFOD Robinson authority to revoke Kleiss's release. And a deportation officer's citation to the delegation provision is not sufficient evidence that a delegation exists. *See Dia v. Jamison*, No. 26-1669, 2026 WL 1193998, at *3 (E.D. Pa. Apr. 30, 2026) (holding that revocation by an acting FOD was "issued ultra vires" where respondents relied on 8 C.F.R. § 1.2 but "no evidence was provided" of a written delegation).

As to the *second* path, even if Robinson had been designated by the FOD, the revocation here would fall short. "[B]efore a district director can revoke release, the district director must make" a finding that revocation is in the public interest and that circumstances do not reasonably permit referral to the EAD. *Ceesay*, 781 F. Supp. 3d at 162; *see* 8 C.F.R. § 241.4(l)(2). Respondents are silent as to both required findings. The Court therefore finds that revocation was unlawful because, based on the record, Respondents failed to assess the public interest and the did not consider referral to the EAD. *See Ceesay*, 781 F. Supp. 3d at 162; *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (finding that ICE did not follow § 241.4 where "[t]he record does not show that" the field office director "ever made the threshold determination" the regulation requires); *Ndoye v. Joyce*, No. 26-1219, 2026 WL 765635, at *4-5 (S.D.N.Y. Mar. 17, 2026) (same); *I.P.V. v. Maples*, No. 26-203, 2026 WL 2321190, at *2 (S.D. Ind. Aug. 11, 2026) (same). *But see Rondon Reyes*, 2026 WL 970231, at *5 (holding that § 241.4(l)(2) does not require the revoking official to state the public-interest and referral findings and inferring that the official made them because—unlike here—they were "apparent from the record").

"[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954). Here, § 241.4(l)(2) does more than prescribe a procedure. It determines who may take away a liberty that ICE itself granted and prescribes findings that must be made before that liberty is revoked. Because Respondents have not shown that an authorized official revoked Kleiss's OSUP, his OSUP remains in effect. Kleiss's detention disregards his OSUP and is thus custody "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

Because Kleiss is entitled to release on this ground, the Court declines to reach Kleiss's remaining arguments. His claim that he was not notified of the reasons for the revocation turns on a conflict between his declaration and ICE's forms that could not be resolved without a hearing, which the ruling under § 241.4(l)(2) makes unnecessary. (ECF No. 19, Reply at 3; ECF No. 4-2 at 3; ECF No. 18-2.) For the same reason, the Court also does not reach whether his removal is reasonably foreseeable under *Zadvydas* or his requests for release on medical grounds.

## IV. CONCLUSION

Given that Kleiss's OSUP was not properly revoked, the appropriate remedy is to restore it. Thus, the Court will order Respondents to release Kleiss within 24 hours, subject to the conditions of his December 17, 2021, OSUP. *See Ceesay*, 781 F. Supp. 3d at 170 (ordering release under the conditions of the petitioner's order of supervision); *I.P.V.*, 2026 WL 2321190, at *3 (same). An appropriate Order follows.

Dated: October 13, 2026

*/s/ Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.